Bassett et ux. vs. Warner et al., impleaded, etc.

to indicate the grounds of my dissent. I think the judgment should be reversed.

*By the Court.* — Judgment affirmed.

BASSETT AND WIFE vs. WARNER and others, impleaded, etc.

| | |
|---|---|
| 23 | 673 |
| 77 | 117 |
| 23 | 673 |
| 86 | 297 |
| 23 | 673 |
| 99 | 270 |
| 23 | 673 |
| 103 | 139 |
| 23 | 673 |
| 112 | ¹451 |
| 23 | 673 |
| 114 | ¹426 |
| 23 | 673 |
| 116 | ³ 48 |
| 116 | ³176 |
| 116 | ³510 |
| 61 LRA | 928 |

EQUITY: *Multifariousness* — *Order in which relief will be granted* — *General and special demurrers.*

1. A complaint in equity by heirs to compel, an accounting by D., who had dealt with the estate as administrator, also asked that certain conveyances of land belonging to the estate, made by D. to W., be declared void (on the ground that W. took with knowledge that they were in fraud of the estate), and that W.'s heirs be decreed to reconvey, etc. On demurrer by W.'s heirs, *Held*, that the complaint is not *multifarious.*

2. The complaint also alleges that certain other lands conveyed to W. by D. (being his own property), were so conveyed for the purpose of placing it beyond the reach of plaintiffs, and that the conveyance, though absolute on its face, was in fact a security for the payment of money, etc., and prays that it be adjudged to be such a security, and that the lands be subjected to the payment of any claim plaintiffs may have against D. on the final accounting. *Held*, that until such accounting had, showing a balance due plaintiffs, and judgment therefor, and execution returned unsatisfied, plaintiffs will have no equity to have said conveyances set aside.

3. The union of allegations which do *not* show any ground for relief, with others which are sufficient, will not in any case render a complaint multifarious.

4. It is no objection to plaintiffs' maintaining their action, that the estate of their ancestor has not been assigned, nor that no administrator *de bonis non* is joined with them; it not appearing that any such has been appointed or is necessary.

5. Where there was a demurrer to the whole complaint for a misjoinder of causes of action, and a special demurrer to one alleged cause of action as insufficient, an order in general terms "that said demurrer be sustained" must be reversed absolutely, although said *special* demurrer was good.

Bassett et ux. vs. Warner et al., impleaded, etc.

APPEAL from the Circuit Court for *Winnebago* County.

The facts alleged in the complaint are substantially as follows: On the 8th of November, 1849, Harvey Jones died at Neenah in said county, intestate, leaving no widow, but leaving as his heirs at law three minor children, *Gilbert C., Abigail W.*, and *Willard Jones*, aged respectively twelve, ten and eight years; of whom the first is made defendant, the second is the wife of *James Bassett* and joined with him as plaintiff herein, and the third has sold his interest to said *James*. On the 3d of December, 1849, the county court of said county appointed Loyal H. Jones (brother of the deceased) administrator of the estate, fixing the amount of his bond at $10,000; and letters of administration were granted him in due form. In March, 1850, he filed an inventory of the property of the estate, showing $17,942 worth of personal property at the appraised value; and in April following he filed a supplemental inventory, showing additional personal property appraised at $4,106. On the 15th of May, 1850, on the application of said Loyal H. Jones and the defendant *Drury*, the county court entered of record an order appointing *Drury* associate administrator with said Jones of said estate; and *Drury* filed his bond as such administrator in the sum of $10,000, and took out letters of administration. On the 20th of November, 1850, the commissioners to examine and adjust claims against said estate filed their report, showing debts allowed by them amounting to $11,867, which, with two debts allowed by said county court, amounting to $503, were all the debts ever allowed against said estate. A portion of said claims, amounting to $1,617, were not for debts owing by Harvey Jones at his death; and Loyal H. Jones and *Drury* well knew that such was the fact, and fraudulently permitted their allowance. The real property of Harvey Jones at his death included a large number of lots at Neenah, situate at the rapids at the foot of Lake Winnebago, and land in and around said town on both sides of the rapids, including a large

water power, which water power was not included in said inventories; also a grist mill and two saw mills. Before the appointment of *Drury* as associate administrator, Loyal H. Jones and the said *Drury* (who was a lawyer) combined together to cheat and defraud the heirs and distributees of said estate out of the property; and all their acts after their appointment were done with a view to that end. After their appointment they took possession of all the real and personal property of the estate, including said mills, and proceeded to run the mills and use the property as if it were their own, until June 17, 1853, and received more than $10,000 out of the profits of the mill business, which they converted to their own use. Before December 5, 1856, they also sold and conveyed to sundry purchasers, by virtue of two licenses of sale obtained from the county court upon certain false and fraudulent allegations, more than $29,000 worth of real property belonging to said estate, and converted the money to their own use. After the last mentioned date, they sold other real property of the estate, and received therefor large sums of money, the exact amount of which is unknown to plaintiffs, and converted the same to their own use; and in case of all such sales gave possession to the purchaser. Afterward, in 1859 and 1860, they mortgaged a large amount of real property of the estate to one Smith to secure the payment of two loans made by him, one of $5,000 at twelve per cent. interest, and the other of $4,000 at ten per cent. interest; and this was done under two licenses obtained by them from the county court by means of certain false and fraudulent allegations; and they converted said two sums of money to their own use. These two mortgages remain unpaid. They also converted to their own use more than $10,000, received as rent for the mills belonging to said estate after the year 1853. A part of the debts allowed against the estate they permitted to remain unpaid for years, until large amounts of interest had accumulated thereon; and $1,800 thereof still

remain chargeable to the estate with the accumulated interest. Said Loyal H. Jones and *Drury*, and said Jones, with the advice, consent and connivance of said *Drury*, also permitted large portions of the real property of the estate to be sold at various times for taxes, and heavy charges have been and will hereafter be incurred by plaintiffs in redeeming portions of said lands from taxes, and other portions thereof have been lost to the estate in consequence of the neglect, bad management and frauds aforesaid. On the 8th of August, 1864, *Gilbert C.* and *Willard Jones*, filed their petition in the county court for an accounting by said Loyal H. Jones and *Drury* as administrators, and they appeared before said court September 5, 1864, and the matter of said accounting was continued until November 9, 1864, when Loyal H. Jones had departed the state to parts unknown, and failed to appear or render any account; and *Drury* appeared and alleged that he was not and never had been such administrator, claiming that the county court had exhausted its powers in that behalf in the appointment of Jones; and the court adjudged that *Drury* had not been legally appointed administrator, and was not liable to account as such. Loyal H. Jones left little or no property in this state, and the sureties on his administration bond are and have long been insolvent. The loss to said estate and to the plaintiffs occasioned by these conversions, maladministrations, etc., is much greater than the amount of the penal sum named in the bonds of said Jones and *Drury*. *Drury* has been frequently requested, but has always refused, to render an account of the assets belonging to the estate which went into his hands; and he refuses to pay to the persons entitled thereto, and to the plaintiffs, the moneys and assets of the estate justly due to them, and, with intent still further to cheat and defraud, fraudulently pretends that the estate is still indebted to him in the sum of $8,000 for services, whereas in fact he is indebted to it, and to the plaintiffs, and the defendant *Gilbert C. Jones*,

as heirs and distributees thereof, in the sum of at least $50,000, by reason of the premises.

2. The complaint further alleges the following facts: On the 12th of October, 1852, said Loyal H. Jones and *Drury*, pretending to act under licenses granted by the county court, as such administrators, sold and conveyed to one Joseph Warner certain specified real property of the estate for $6,000, cash in hand, which was far less than its real value at that time. Various irregularities in the proceedings to obtain such licenses and in making the sale are specified, and it is alleged that the licenses were obtained upon certain false and fraudulent statements of said Jones and *Drury* in regard to the condition of the estate. Warner accepted possession of the lands, which was given him by Jones and *Drury*, and took control of them, and received the rents and profits thereof until the commencement of this suit. At the time of the sales to him, Warner knew that they were unnecessary, and they were in fact made with a secret understanding between him and Jones and *Drury*, that he should be repaid with a high rate of interest the $6,000, which he loaned to them for their individual benefit and not for that of the estate, and that he would afterward reconvey to them individually the said lands, or would sell the same and give them personally the benefit of any amount realized therefor over said $6,000, with interest, and his outlays for taxes, with like interest thereon. After the lands were conveyed to him, Warner appointed *Drury*, or Jones and *Drury*, his agent, or agents, to take charge of them, pay the taxes thereon and lease and sell them; and *Drury*, or Jones and *Drury*, continued so to act until this suit was commenced. Knowing that Warner's title to the lands was fraudulent, he and his said agents fraudulently permitted them, or a great portion of them, from time to time to be sold for taxes, and caused tax deeds to be issued thereon either to themselves or to some friend or friends, in trust for them and for their benefit.

And said *Drury* and other defendants falsely and fraudulently pretend that they have a good title to said lands by virtue of said tax deeds. Said Loyal H. Jones and *Drury*, or one of them, pretending to act as agent or agents for Warner, have sold and conveyed portions of said lands so conveyed to Warner, and as purchase-money for the same, Warner or his said agent or agents have received a large amount of money, the exact amount of which is unknown to plaintiffs. And in execution of the said fraudulent and secret understanding, Joseph War-. ner, on the 21st of April, 1862, executed and delivered to Loyal H. Jones and *Drury*, as individuals, another agreement to convey to them said property for $16,796, which sum was ascertained and fixed by counting said $6,000 at twelve per cent., or some higher rate of interest, and adding thereto the taxes and charges upon said property paid up to that time by Warner.

3. The complaint further alleges, that, as a security for the payment of the $16,796 last mentioned, *Drury* has conveyed to Warner certain described lands in Fond du Lac and Outagamie counties, being all the real estate of the said *Drury* in Wisconsin; that the deeds of conveyance are absolute on their face, but were made "only as pretended collateral security to the fulfillment of the agreement contained in said contract with Warner; and that such conveyances were so made by said *Drury* for the purpose of putting his property out of the reach of the heirs and distributees of said estate," etc.; that the conveyances were made for no good or valid consideration, and said lands are still owned by *Drury*, and are occupied and enjoyed by him as his own; and he has no other property that can be reached to satisfy any claim plaintiffs may have against him. On the 9th of November, 1864, Loyal H. Jones and *Drury* were removed by the county court from their office as such administrators. All the allowed claims against the estate have been settled, and there is property left belonging

to it, and never sold, " sufficient to pay all just claims against and settle said estate." On the 12th of August, 1865, Loyal H. Jones died intestate, leaving the defendant *Leonard C. Jones*, his son and only heir at law, and leaving little or no property to the knowledge of plaintiffs. On the 31st of December, 1865, Joseph Warner aforesaid died intestate, leaving certain persons named his heirs at law, who are made defendants herein.

The prayer is as follows:

(1) That *Drury* be adjudged to render an account of his acts and doings while acting or professing to act as administrator as above stated; also an account of all moneys and assets of said estate received by him, or by him jointly with Loyal H. Jones; also an account of the rents and profits of said mills and other real property of said estate; also an account of moneys and assets received by Loyal H. Jones, and concealed, wasted, misapplied or converted by said Jones, as set forth in the complaint, under the advice or with the consent, connivance or assistance of *Drury*; also an account of all the lands of the estate which had been sold by *Drury*, or by him jointly with Loyal H. Jones, or by the latter under his advice, and with his consent, connivance and assistance, with the dates of such sales, the particular portions of lands so sold, the amount of the purchase money thereof paid or agreed to be paid by the purchasers, with the interest thereon; that said *Drury* be adjudged to be liable therefor to these plaintiffs to the extent of their distributive share therein; and be adjudged to pay plaintiffs the amount found due them from him on said accounting, etc. (2) That the lands of *Drury*, conveyed to Warner, in Fond du Lac and Outagamie counties above mentioned, be adjudged to have been so conveyed as collateral security, etc., and for the purpose of putting them out of the reach of the heirs of said estate. (3) That said conveyances to Joseph Warner of lands of said estate be adjudged fraudulent

and void, and be annulled; that an account be taken of the rents and profits of said lands since such conveyance; also of the purchase money received by Warner, or by any person for him, on the sales of any such lands sold by him (which sales the plaintiffs offer to confirm); also an account of taxes on such lands, paid by Warner or by any person for him; that if, upon such accounting, any sum shall be found due Warner on account of such taxes in excess of such rents, profits and purchase money, then said lands of *Drury*, in Fond du Lac and Outagamie counties, or so much thereof as shall be necessary, be sold, and the proceeds applied to pay the same, and thereupon (or in case such proceeds prove insufficient, then upon payment of the balance of such sum by plaintiffs) the defendants (or persons claiming under them since the commencement of this action) be adjudged to execute and deliver to the plaintiffs a deed or deeds conveying all interest acquired by Joseph Warner or any of said defendants under the conveyances to Warner from Loyal H. Jones and *Drury*, or acquired by means of tax titles; or, in case the court should refuse to declare fraudulent and set aside said conveyance to Joseph Warner of lands of said estate, and shall find that any of said defendants are entitled to receive from the plaintiffs any sum of money on account of said contract between him and Loyal H. Jones and *Drury*, then that so much as shall be necessary of *Drury's* said lands in Fond du Lac and Outagamie counties be sold, and the proceeds applied to the payment of said last mentioned sums, and that thereupon (or in case of any deficiency in the proceeds of such sale, then upon payment of said last mentioned sum, or the balance thereof by the plaintiffs), said defendants, etc., be adjudged to execute and deliver the deeds aforesaid. (4) That the residues, if any there be, of *Drury's* said lands, or so much thereof as necessary, be sold, and the proceeds applied to the payment of any judgment that may be entered in this action against *Drury* for moneys due

from him to plaintiff. 5. If the court shall refuse to order a sale of said lands of *Drury*, or if they shall not produce any proceeds to be applied as before prayed, then that it may be adjudged that, upon payment by plaintiffs of their share of any amount that shall be found due any of the defendants on account of said Warner's contract, or on account of taxes paid by or for him on said lands of the estate sold to him, the defendants, etc., execute and deliver the deeds before prayed for. There is a further prayer for general relief.

The *Warner heirs* demurred to the complaint, on the grounds, 1. That the court had no jurisdiction of the subject of the action, for that the county court of said county had acquired and still had exclusive jurisdiction thereof. 2. That the administrators of the estate of Harvey Jones, deceased, should have been joined as plaintiffs. 3. That the administrators of the estate of *Joseph Warner*, deceased, and the several persons who had purchased portions of the lands conveyed to him by the administrators' deeds mentioned in the complaint, should have been joined as defendants. 4. That several causes of action were improperly joined. 5. That the complaint did not state facts sufficient to constitute a cause of action. They further demurred severally (on the same grounds except the *fourth*), first, to the alleged cause of action for annulling the administrators' conveyances to *Joseph Warner;* and secondly, to the alleged cause of action for subjecting the lands of the defendant *Drury*, in Fond du Lac and Outagamie counties, to the payment of the plaintiffs' claim against *Drury*. The court made an order in general terms, "that the said demurrer be, and the same is hereby sustained;" and the plaintiffs appealed.

*Gary & Burnell*, for appellants:

1. *Drury*, having acted as administrator for over fourteen years, must be bound to account somewhere. Having assumed to act as a trustee, he is liable as such. 3 Leading Cases in Eq.

*733, note, and cases there cited. Such a case is peculiarly within the jurisdiction of equity. 1 Story's Eq. Jur. § 465. The circuit court has jurisdiction to compel an administrator to account. *McLachlan v. Staples,* 13 Wis. 448; *Hart v. Ten Eyck,* 2 Johns. Ch. 62; *Rogers v. King,* 8 Paige, 210; *Brooks v. Gibbons,* 4 id. 374; *Allen v. Clark,* 2 Blackf. 343; *Washburne v. Dorsey,* 8 Smedes & M. 214. 2. The complaint does not show that administrators *de bonis non* have been appointed. It does show that all allowed claims against the estate have been settled, and therefore no persons except heirs and distributees have any interest in the suit. Such administrators, if there were any, would not be proper parties as against *Drury,* for they could only administer the estate not already administered (R. S. ch. 99, §§ 14, 15), and "a *devastavit* constitutes such an administration as places the goods (and the value of them) converted or wasted beyond the authority of an administrator *de bonis non."* *Young v. Kimball,* 8 Blackf. 167. The liability is only to creditors and distributees. *Rowan v. Fitzpatrick,* 14 Ill. 1, and cases there cited. Nor would such administrators be proper parties against the *Warners.* R. S. ch. 100, § 16; *Barker v. Barker,* 14 Wis. 131; *Webster v. Tibbits,* 19 id. 439. 3. It does not appear that there are any administrators of the estate of Joseph Warner; and if there were, they have no title to the land whose reconveyance is sought, nor are they trustees thereof. *Barker v. Barker,* 14 Wis. 131. 4. The purchasers from Warner of portions of the land conveyed to him are not proper parties, because no relief is sought against them. 5. These causes of action in the complaint are not improperly joined. To this point counsel cited Story's Eq. Pl. §§ 530, 539; *McLachlan v. Staples,* 13 Wis. 453; *Att'y Gen. v. Cradock,* 3 Mylne & C. 85; *Campbell v. Mackay,* 1 id. 603; *Carroll v. Roosevelt,* 4 Edw. Ch. 211; *Brinkerhoff v. Brown,* 6 Johns. Ch. 157; *Fellows v. Fellows,* 4 Cow. 682; *Morton v. Weil,* 33 Barb. 30; *Putnam v. Sweet,* 1 Chand. 286;

*Winslow v. Dousman*, 18 Wis. 456 ; *Blake v. Van Tilborg*, 21 id. 672. Suppose we proceed against *Drury* alone for an accounting. If he converted the $6,000 received from Warner to his own use, as alleged, shall he now account for it to the plaintiffs? Does that not depend upon the equities to be adjusted between the plaintiffs and these defendants, whether we shall have judgment for it or not? If we receive it from him, these defendants might well say we have ratified the sale to Warner. If we do not, and the court should say we may redeem the land, but are only entitled to have the deed declared a mortgage, then we lose it. The causes of action "grow out of transactions connected with the same subject of action;" and those transactions *are all* one connected series of frauds in the management of a trust, in which all the defendants are implicated, though not to the same extent. 6. Under the Code, "redundant and irrelevant matter, and demand for unsuitable relief, do not render a pleading subject to demurrer." *Bishop v. Edmiston*, 16 Abb. 466 ; *The People v. The Mayor*, etc., 28 Barb. 240.

*Palmer & Hooker*, for respondents :

1. *Drury* cannot be charged as executor in his own wrong, but is responsible, if at all, as a wrong-doer; and the only remedy against him is by an action at law. R. S. ch. 147, § 17. 2. Chancery will not question, in favor of a creditor, the disposition made of his property by an insolvent debtor, until judgment obtained and execution issued. *Adler v. Fenton*, 24 How. (U. S.) 407 ; *Day v. Washburn*, id. 352 ; *Montague v. Horton*, 12 Wis. 606 ; *Almy v. Platt*, 16 id. 169 ; *Reubens v. Joel*, 3 Kern. 488 ; *Wiggins v. Armstrong*, 2 Johns. Ch. 144 ; *Brinkerhoff v. Brown*, 4 id. 671 ; *Beck v. Burdett*, 1 Paige, 305. 3. The judgment of the court of probate is final, unless appealed from, at least as to the regularity of the proceedings therein. Laws of 1861, ch. 127 ; *Grignon's Lessee v. Astor*, 2 How. (U. S.) 319. 4. Plaintiffs have affirmed the

contract of sale of the lands of the estate in question, with a full knowledge of the fraud. They ask judgment against *Drury* for the purchase money of these lands; and they expressly offer to affirm the fraudulent sale as to those of them which have been sold by *Warner*. In order to avoid the sale, upon discovering the fraud, they must do it immediately and unconditionally, and must avoid or affirm the *whole* contract. *Weed v. Page*, 7 Wis. 503; *McLachlan v. Staples*, 13 id. 448. 5. The estate has not been assigned. The title to the personal property, and the right to the possession of the real estate, is in the administrator *de bonis non*, if one has been appointed; and if not, the property is in the custody of the probate court, awaiting such appointment. R. S. ch. 100, § 7; id. ch. 103, §§ 2, 4; id. ch. 117, §§ 1, 6; *Edwards v. Evans*, 16 Wis. 181; 1 Williams on Ex'rs, 546. In case of the removal of an administrator, the probate court is required to appoint another. R. S. ch. 99, §§ 14, 15. The judgment in this suit would not be a bar to an action by the administrator *de bonis non*. 6. The county court has acquired and still holds exclusive jurisdiction of the subject matter of the action. 7. The several causes of action set out in the complaint are not of the same class or character, nor do they affect the same parties; and they require different places of trial. *Gardner v. Ogden*, 22 N. Y. 327; R. S. ch. 125, §§ 29, 30; id. ch. 123, § 1; *Sauer v. Steinbauer*, 14 Wis. 71; *Walton v. Goodnow*, 13 id. 661; *Borden v. Gilbert*, id. 670.

Cole, J. Although the complaint in this case is demurred to on several grounds, yet the only question which seems to us to require any serious examination is, whether the complaint is bad on account of multifariousness.

It is true, one ground of demurrer assigned is, that the circuit court has no jurisdiction of the subject matter of the action, for the reason that the county court of Winnebago

county has acquired, and still retains, exclusive jurisdiction thereof. But this objection, and the one that the complaint does not state a cause of action, seem to us so obviously untenable that no particular attention need be given them. One cannot give the complaint the slightest examination without coming to the conclusion, that if the facts are as there alleged, a case is presented for the equitable cognizance of the circuit court. But whether the complaint is liable to the objection of improperly uniting several causes of action, is a question which will be briefly considered.

Is then the complaint open to the objection of multifariousness? What constitutes multifariousness in a bill or complaint in equity, is a matter not always to be readily determined. The decisions, indeed, are not always in harmony upon the point. "By multifariousness in a bill is meant," says Mr. Justice STORY, "the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill. In the latter case, the proceeding would be oppressive, because it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings with the statement of the several claims of the other defendants, with which he has no connection." Section 271, Eq. Plead. In section 271 a (Redfield's ed.) he proceeds to add that "the objection must still be confined to cases, where the case of each particular defendant is entirely distinct and separate in its subject matter from that of the other defendants; for the case against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case, the objection of multifariousness could not be allowed to prevail." In

*McLachlan v. Staples,* 13 Wis. 448, this court cites with approval the language employed by this distinguished jurist in a subsequent section of this same work (§ 539), where he gives the result of the authorities as to what constitutes multifariousness. He there says, " that there is not any positive, inflexible rule as to what, in the sense of courts of equity, constitutes multifariousness, which is fatal to the suit on demurrer. These courts have always exercised a sound discretion in determining whether the subject matters of the suit are properly joined or not. * * And it is not very easy, *a priori,* to say exactly what is, or what ought to be, the true line regulating the course of pleading on this point. All that can be done in each particular case, as it arises, is to consider whether it comes nearer the class of decisions where the objection is held to be fatal, or to the other class, where it is held not to be fatal. And in new cases, it is to be presumed that the court will be governed by those analogies which seem best founded in general convenience, and will best promote the due administration of justice, without multiplying unnecessary litigation on the one hand, or drawing suitors into needless and oppressive expenses on the other." In the cases referred to in the notes to the sections we have just quoted, will be found many instructive illustrations of this rule of pleading, and where the objection of multifariousness has been held to apply, and where not to apply.

Now, with the light which this reference to the authorities affords, let us direct our attention to the matters stated in the complaint. And the question arises, Can it fairly be said that the *Warner heirs* have no connection with the matters in the complaint stating a cause of action against the defendant *Drury?* It appears to us not.

The complaint is too lengthy to allow of even a synopsis of its allegations. The principal object of the suit, however, seems to be, to obtain an accounting from the defendant

*Drury*, and a disclosure of his dealings with the estate of Harvey Jones. He assumed to act as administrator of that estate for several years; has had much to do with its management and control; has been engaged in many important business transactions relating thereto; has run mills; manufactured lumber; leased and sold real property; and an accounting is asked from him of all moneys received by him as administrator, either alone or jointly with his co-administrator, Loyal H. Jones; and of rents and profits of the mills and real estate therein mentioned; of sales made by them of real estate belonging to the estate of Harvey Jones; a statement of all assets of the estate which have been wasted, concealed, misapplied or converted by him, or by his co-administrator, with his knowledge, assistance and connivance; also that *Drury* be adjudged to pay the amount due upon such accounting to the extent of the plaintiffs' interest and share in the estate of Harvey Jones; that certain conveyances of real estate which belonged to that estate, made by the administrator to Joseph Warner, be declared void, and *Warner's heirs at law* be decreed to reconvey the property to the heirs at law of Harvey Jones, because, as is alleged, these deeds were fraudulently procured by Warner from the administrators, with full knowledge that they were invalid, and for the purpose of aiding and abetting the administrators in misappropriating the trust funds and in speculating out of the property of the estate of Harvey Jones. Now, although there are many things stated in the complaint, with which the *Warner heirs* have no connection, and which relate to *Drury* and his co-administrator alone, it appears to us, that, so far as the real estate is concerned, which it is alleged Warner acquired through his fraudulent dealings with the administrators, or in aiding them in their alleged illegal acts and management of that estate, and of which a reconveyance is sought from them as a part of the relief in this suit, those heirs are very proper and necessary parties.

One of the objects of the suit is to reach this real estate; and certainly, before the *Warner heirs* are called upon to surrender their title to it, they should have an opportunity of contesting the question whether their ancestor received it under such circumstances as render the conveyances void as to the heirs of Harvey Jones. As a matter of course, they have a direct interest in that part of the case. And the alleged fraudulent acts of the administrators in respect to this property are so mixed up with their general administration, that they cannot well be separated. For all the transactions between the administrators and Joseph Warner are more or less connected with the business of the estate of Harvey Jones, and the property of that estate, and can therefor be more properly investigated in this action, than in a separate suit. So that we are of the opinion, that while the defendant *Drury* is called upon in this suit to account for the money received by him as administrator, and for rents and profits of real estate, and property sold, and generally to account for his administration of the estate of Harvey Jones, there can be no valid objection to requiring the *heirs of Warner*, in the same action, to surrender any property which they may hold belonging to that same estate. At all events, we do not think the objection of multifariousness will apply because that matter is included with the other matters stated in the complaint. The complaint seems to be fully sanctioned in this regard by the reasoning and decisions in the cases of *Gaines v. Chew*, 2 How. (U. S.) 619, and *The Attorney-General v. Cradock*, 3 Myl. & Craig, 85, as well as the authorities cited by Mr. Justice STORY, above referred to.

It was, however, further objected, that the complaint was multifarious, because, in addition to the relief asked as above stated, it is likewise sought in this action to subject certain real estate belonging to the defendant *Drury* — which, it is alleged, has been conveyed by him to Joseph Warner as col-

lateral security for the fulfillment of a certain contract therein named, and also to place the property beyond the reach of *Drury's* creditors — to subject this property to the payment of any claim which the plaintiffs may have against *Drury* on the final accounting. It is insisted that this is a cause of action entirely distinct from the matters relating to the administration of the estate of *Harvey Jones*, or the lands conveyed by the administrators to *Warner*, and that including it in the complaint renders the complaint multifarious. But we think this objection untenable. To render a complaint multifarious, distinct and independent causes of action must be improperly united. The complaint in this case states no ground for setting aside these conveyances made by *Drury* to *Warner*; in other words, sufficient facts are not stated to entitle the plaintiffs to any relief in respect to that matter. For not until an accounting is had, will it be known whether the plaintiffs have any claim against *Drury* or not. Manifestly they have no right, upon the facts stated in the complaint, to have those conveyances set aside, even assuming that they are fraudulent as to *Drury's* creditors. They must first obtain their judgment, and issue their execution, before they can call upon a court of equity to set aside those conveyances. Therefore, it is obvious that not until the accounting is had, and it is found that *Drury* is indebted to the plaintiffs, have they any right to question the good faith or honesty of any disposition he may have made of his property, or ask that any of his conveyances be set aside. In this respect, including those matters in the complaint does not render it multifarious. Upon this point Chancellor WALWORTH, in *Maury v. Beekman Iron Co.*, 9 Paige, 188–194, states the rule. "To render a bill multifarious, it must contain two or more good grounds of suit, which cannot properly be joined in the same bill, against the same defendant or different defendants. For if a good cause of complaint is joined in the bill with other allegations which

could not entitle the complainant to file a bill against the defendants or either of them, such allegations are simply impertinent, or afford grounds for demurrer to that part of the bill for want of equity." To the same effect is his decision in *Varick v. Smith*, 5 Paige, 137–160. This seems to dispose of the objection that the complaint is multifarious on account of what is therein stated about the conveyances made by *Drury* of his own property.

Again, it is said the plaintiffs are seeking to affirm and avoid at the same moment the conveyances made by the administrators to Warner. We do not so understand it. They ask for judgment against *Drury* as to that portion of the lands which have been sold by Warner, and which cannot be recovered, and as to that portion of them remaining unsold, they ask a reconveyance. We see no inconsistency in this position. *Gardner v. Ogden*, 22 N. Y. 327.

Nor do we think there is any validity in the position that the plaintiffs cannot recover as heirs of Harvey Jones, because the estate has not been assigned, or because the administrator *de bonis non* of Harvey Jones is not joined. It does not appear that an administrator *de bonis non* has been appointed, and the complaint shows no necessity for appointing one.

It appears to us that this disposes of the material questions raised by the demurrer.

*By the Court.* — The order of the circuit court, sustaining the demurrer, is reversed, and the cause remanded for further proceedings.

On a motion for a rehearing, the counsel for respondents argued that, as the complaint asked that *Drury* should be charged in account with the whole sum paid by Warner to the administrators for lands of the estate conveyed to Warner, this was a ratification of that sale, or at least the respondents could not be required in the same action to account for the proceeds

of such portions of said lands as Warner had sold, and to reconvey the remainder. 2. That as the alleged cause of action touching *Drury's* lands in Fond du Lac and Outagamie counties is confessedly bad, and there was a demurrer to that part of the complaint on that ground, the order should be affirmed as it relates to that part of the case.

Cole, J. On the motion for a rehearing, it is insisted that the demurrer should have been sustained, so far, at least, as it relates to the alleged cause of action for subjecting the lands in Fond du Lac and Outagamie counties, conveyed by *Drury* to Joseph Warner, to the payment of any claim the plaintiffs may establish against *Drury*. But the difficulty was in getting at that precise question on this appeal. The demurrer was sustained generally to the entire complaint. That order was clearly erroneous. The plaintiffs were compelled to bring the cause to this court to obtain a reversal of the order that held the entire complaint bad. We have held, in effect, that the complaint does not state facts sufficient to entitle the plaintiffs to any relief in respect to those lands. And if the demurrer had only been sustained as to that cause of action, it would have been affirmed. But it does not appear that the attention of the circuit court was called to that particular ground of demurrer. At all events, the record does not show that the court ever ruled upon the sufficiency of that part of the complaint distinct from the other matters therein set forth. The demurrer as sustained was quite too broad. It went to the whole complaint and to any matter it contained. So that, although the complaint was specifically demurred to as not stating facts constituting a cause of action in respect to those lands conveyed by *Drury* to Warner in Fond du Lac and Outagamie counties, yet, as it was sustained generally, we had to reverse the order. Perhaps, if the defendants had only asked the court to sustain their demurrer as to that cause of

action, the plaintiffs would have been satisfied to have had the complaint held insufficient.

*By the Court.* — The motion for a rehearing is denied.